SHEPPARD MULLIN RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
KYLE MATHEWS, Cal. Bar No. 218384
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1448
Telephone:    213-620-1780
Facsimile:    213-620-1398

Attorneys for Secured Creditor,
COMERICA BANK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>KRYSTAL KOACH, INC.,<br><br>Debtor and<br>Debtor-in-Possession. | Case No. 8:10-bk-26547-RK<br><br>Chapter 11<br><br>**STIPULATION REGARDING USE OF CASH COLLATERAL AND TO PROVIDE ADEQUATE PROTECTION**<br><br>Date:<br>Time:<br>Place: |

This Stipulation regarding Use of Cash Collateral and to Provide Adequate

Protection ("Stipulation") is entered into by and between Krystal Koach, Inc., a California

corporation, Debtor and Debtor-in-Possession (the "Debtor"), and Comerica Bank ("Comerica"),

with reference to the following facts:

**RECITALS**

A.    The above-captioned bankruptcy case was commenced on November 19 2010 (the "Petition Date"), when the Debtor filed its petition under Chapter 11 of 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"). The Debtor remains in possession of its assets as a debtor-in-possession and continues to operate its business pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

B.    The Debtor and Comerica entered into a Second Amended and Restated Loan and Security Agreement (Accounts and Inventory) dated as of February 20, 2007, pursuant to which Comerica agreed to provide revolving loans to the Debtor based upon a stated formula, as more particularly set forth therein (the "Pre-Petition Revolving Loans").

C.    The Second Amended and Restated Loan and Security Agreement (Accounts and Inventory) dated as of February 20, 2007 has been modified pursuant to the terms of the following agreements: (1) a First Modification to Second Amended and Restated Loan and Security Agreement dated as of April 20, 2009, and (2) a Second Modification to Second Amended and Restated Loan and Security Agreement dated as of December 23, 2009 (as amended, collectively, the "Loan Agreement"). A true and correct copy of the Loan Agreement together with all modifications thereto is attached hereto as Exhibit "A", which are incorporated herein in full by this reference.

D.    The Debtor is also obligated to Comerica pursuant to a Variable Rate-Installment Note dated as of October 31, 2007 (as amended, the "Note") in the original principal amount of $1,997,560.10, issued by the Debtor to the order of Comerica, pursuant to which Comerica provided the Debtor with an installment loan (the "Pre-Petition Installment Loan" and together with the Pre-Petition Revolving Loans, the "Pre-Petition Loans"). A true and correct

1  copy of the Note is attached hereto as Exhibit "B", which is incorporated herein in full by this
2  reference.

3          E.    The Debtor is also obligated (the "Pre-Petition Swap Obligations") to
4  Comerica pursuant to an ISDA Master Agreement dated as of October 31, 2007 (as amended, the
5  "ISDA") by and between the Debtor and Comerica and all related Confirmations (as defined in the
6  ISDA), including, without limitation, a Confirmation dated as of October 31, 2007 by and between
7  the Debtor and Comerica with a notional amount of $1,997,560.10 (the "Confirmation"). A true
8
9  and correct copy of the ISDA and Confirmation are attached hereto as Exhibit "C", which are
10  incorporated herein in full by this reference.

11          F.    The Debtor is also obligated (the "Pre-Petition L/C Obligations") to
12  Comerica pursuant to an agreement regarding letter of credit/letter of credit application dated as of
13  September 8, 2000 (as amended, the "L/C Agreement") pursuant to which the Debtor agreed to
14  repay Comerica for any and all amounts for which Comerica may become liable under the
15  Irrevocable Standby Letter of Credit No. 561344 dated as of September 8, 2000 (as amended, the
16
17  "L/C") in the amended principal amount of $907,314 issued by Comerica for the benefit of
18  Lumberman's Underwriting Alliance for the account of the Debtor. A true and correct copy of the
19  L/C Agreement and L/C are attached hereto as Exhibit "D", which are incorporated herein in full
20  by this reference.

21          G.    Edward P. Grech, an individual ("Mr. Grech") and Comerica entered into an
22  Amended and Restated Private Access Line Variable Rate-Note dated as of April 20, 2009 in the
23  original principal amount of $8,000,000, issued by Mr. Grech to the order of Comerica, pursuant
24
25  to which Comerica provided Mr. Grech with certain revolving credit facilities (the "Grech
26  Loans").

27

28

H.     The Debtor guarantied (the "Pre-Petition Grech Guaranty Obligations") the Grech Loans and all other obligations of Mr. Grech to Comerica pursuant to the following documents (collectively, the "Debtor Grech Guaranties"):  (1) a Guaranty dated as of November 16, 2005 by the Debtor in favor of Comerica; (2) a Guaranty dated as of September 19, 1995 by the Debtor in favor of Comerica; (3) a Guaranty dated as of July 9, 2002 by the Debtor in favor of Comerica; (4) a Guaranty dated as of June 24, 1996 by the Debtor in favor of Comerica; (5) a Guaranty dated as of March 22, 1995 by the Debtor in favor of Comerica; (6) a General Continuing Guaranty dated as of August 1, 1992 by the Debtor in favor of Comerica; (7) a Guaranty dated as of February 2, 1996 by the Debtor in favor of Comerica; and (8) a Guaranty dated as of June 16, 1999 by the Debtor in favor of Comerica.

I.      Imperial Highway, LLC ("Imperial") and Comerica entered into: (i) a Term Loan Agreement dated as of July 12, 2005 (as the same has been or may be amended, supplemented, replaced, restated or otherwise modified from time to time, the "Imperial Loan Agreement"), (ii) a Note Secured by Deed of Trust dated as of July 12, 2005 (as the same has been or may be amended, supplemented, replaced, restated or otherwise modified from time to time, the "Imperial Note A") in the original principal amount of $5,950,000.00 issued by Imperial to the order of Comerica, and (iii) a Note Secured by Deed of Trust dated as of August 15, 2006 (as the same has been or may be amended, supplemented, replaced, restated or otherwise modified from time to time, the "Imperial Note B") in the original principal amount of $1,625,000.00 issued by Imperial to the order of Comerica, pursuant to which Comerica provided Imperial with certain term credit facilities (the "Imperial Loans").

J.      Imperial is also obligated (the "Imperial Swap Obligations") to Comerica pursuant to an ISDA Master Agreement, dated as of June 27, 2006 (as the same has been or may be amended, supplemented, replaced, restated or otherwise modified from time to time, the

-4-

STIPULATION RE USE OF
CASH COLLATERAL

"Imperial ISDA") by and between Imperial and Comerica and all related Confirmations (as defined in the Imperial ISDA), including without limitation: (i) a Confirmation dated as of June 28, 2006 by and between Imperial and Comerica with an initial notional amount of $1,950,000.00, and (ii) a Confirmation dated as of June 28, 2006 by and between Imperial and Comerica with an initial notional amount of $4,550,000.00.

K.     The Debtor guarantied (the "Pre-Petition Imperial Guaranty Obligations") the Imperial Swap Obligations, the Imperial Loans and all other obligations of Imperial to Comerica pursuant to the following documents (collectively, the "Debtor Imperial Guaranties"): (i) a Guaranty dated as of August 15, 2006, and (ii) a Guaranty dated as of July 12, 2005 (jointly and severally entered into with Mr. Grech and Mr. Grech's trust) (v) a Guaranty dated as of February 20, 2001 (jointly and severally entered into with Mr. Grech and Mr. Grech's trust).

L.     The Loan Agreement, Note, ISDA, Confirmation, L/C Agreement, L/C, Debtor Grech Guaranties, Debtor Imperial Guaranties, Security Agreements (defined below), all other Loan Documents as defined in the foregoing documents and any other document executed in connection with any of the Pre-Petition Obligations shall be collectively referred to herein as the "Pre-Petition Loan Documents").

M.     The following amounts are owing under the Pre-Petition Loan Documents as of November 19, 2010:

1.     Pre-Petition Revolving Loans – The outstanding balance of principal and interest owing to Comerica in the form of revolving loans as of the Petition Date is at least $7,398,301.81 plus additional interest, reasonable attorneys' fees, appraisal fees and other reasonable expenses;

2.     Pre-Petition Installment Loan – The outstanding balance of principal and interest owing to Comerica in the form of installment loans as of the Petition Date is at least

$878,762.36 plus additional interest, reasonable attorneys' fees, appraisal fees and other reasonable expenses;

3.    Pre-Petition Swap Obligations – The outstanding termination obligations owing under the ISDA and Confirmation is at least $42,000, if terminated on such date;

4.    Pre-Petition L/C Obligations – The outstanding undrawn amount with respect to letters of credit issued by Comerica for the account of the Debtor is at least $907,000.00;

5.    Pre-Petition Grech Guaranty Obligations – The outstanding amount owing under the Debtor Grech Guaranties is at least $5,574,637.75, plus additional interest, reasonable attorneys' fees, appraisal fees and other reasonable expenses; and

6.    Pre-Petition Imperial Guaranty Obligations – The outstanding amount owing under the Debtor Imperial Guaranties is at least $7,364,319.73, plus additional interest, reasonable attorneys' fees, appraisal fees and other reasonable expenses.

N.    The Pre-Petition Loans, Pre-Petition Swap Obligations, Pre-Petition L/C Obligations, Pre-Petition Grech Guaranty Obligations, Pre-Petition Grech Guaranty Obligations and all other obligations of the Debtor to Comerica (collectively, the "Pre-Petition Obligations") are secured by a security interest in all personal property of the Debtor, wherever located (collectively, the "Pre-Petition Collateral") as evidenced by the following documents (collectively, the "Security Agreements"): (1) the Loan Agreement; (2) a Security Agreement (All Assets) dated as of July 13, 1994 by the Debtor in favor of Comerica; (3) a Security Agreement dated as of July 9, 2002 by the Debtor in favor of Comerica; (4) a Security Agreement (All Assets) dated as of September 19, 1995 by the Debtor in favor of Comerica; (5) a Security Agreement (All Assets) dated as of August 26, 1997 by the Debtor in favor of Comerica; (6) a Security Agreement

-6-

(Machinery and Equipment) dated as of November 10, 1993 by the Debtor in favor of Comerica; (7) a Security Agreement dated as of August 1, 1992 by the Debtor in favor of Comerica; (8) a Security Agreement (Machinery and Equipment) dated as of August 18, 1993 by the Debtor in favor of Comerica; (9) a Security Agreement (Machinery and Equipment) dated as of September 22, 1993 by the Debtor in favor of Comerica; and (10) a Security Agreement (All Assets) dated as of June 24, 1996 by the Debtor in favor of Comerica. A true and correct copy of the Security Agreements are attached hereto as Exhibit "E", which are incorporated herein in full by this reference.

O.    The Pre-Petition Obligations are further secured by a security interest in the "Collateral" as defined in the Intellectual Property Security Agreement dated as of December 23, 2009, by the Debtor in favor of Comerica, recorded on January 12, 2010, in the United States Patent and Trademark Office on Reel/Frame 023768/0607 and 004130/0083, a true and correct copy of which is attached hereto as Exhibit "F".

P.    Comerica perfected its security interest in the Pre-Petition Collateral by filing a UCC-1 Financing Statement with the California Secretary of State's office. A true and correct copy of a certified UCC search report evidencing the perfection of Comerica's security interest is attached hereto as Exhibit "G".

Q.    The Pre-Petition Obligations are also secured by a security interest in all personal property of Mr. Grech, as more particularly described in the following agreements:  (1) a Security Agreement (Collateral Pledge) dated as of August 1, 1993 by Mr. Grech in favor of Comerica; (2) a Security Agreement (Collateral Pledge) dated as of December 1, 1993 by Mr. Grech in favor of Comerica; and (3) a Security Agreement (All Assets) dated as of July 13, 1994 by Mr. Grech in favor of Comerica.

STIPULATION RE USE OF
CASH COLLATERAL

R.      The Pre-Petition Obligations are also guaranteed by Imperial pursuant to a Limited Recourse Guaranty dated as of December 23, 2009 (as amended, the "Imperial Guaranty").

S      The obligations of Imperial under the Imperial Guaranty are secured by a security interest in the "Trust Estate" as defined in and pursuant to a Deed of Trust, Security Agreement and Fixture Filing with Assignment of Rents and Leases to Secure Guaranty dated as of December 24, 2009, by Imperial in favor of Comerica, recorded on January 6, 2010 in the Official Records of the County of Orange, State of California, as Instrument No. 2010000004967.

T.      All proceeds of the Debtor's Pre-Petition Collateral, including work in progress, inventory, accounts receivable and deposit accounts in existence at the time of the Debtor's bankruptcy filing and wherever located now are Comerica's cash collateral pursuant to Section 363 of the Bankruptcy Code. This Stipulation is intended to authorize the Debtor to use Comerica's cash collateral for the Budget Period (described below), while providing adequate protection of Comerica's interest therein pursuant to Section 363 of the Bankruptcy Code.

U.      The Debtor requires continued use of Comerica's cash collateral in order to continue the operation of, and maintain the going concern value of, the Debtor's business. Subject to Court approval of this Stipulation, Comerica is willing to permit the Debtor to use Comerica's cash collateral for the eight-week period beginning on the Petition Date (the "Budget Period") upon the terms and conditions as provided for herein and upon the provision of adequate protection. Accordingly, the Debtor and Comerica seek authority to establish a basis upon which the Debtor may use Comerica's cash collateral in accordance with the terms set forth herein and to provide for the adequate protection of Comerica's security interest in the collateral utilized by the Debtor.

W02-WEST:1GIG1\402994664.5

-8-

STIPULATION RE USE OF
CASH COLLATERAL

V.    In order to provide Comerica with adequate protection from a loss, decrease, diminution or decline in the value of the assets of the Debtor and the property of the Debtor's estate caused or resulting from the use, sale or lease thereof by the Debtor in accordance with Section 363(e) of the Bankruptcy Code, or from the consequences of the automatic stay imposed by Section 362 of the Bankruptcy Code ("Post-Petition Loss"), Comerica is entitled to adequate protection under Sections 361 and 363(e) of the Bankruptcy Code in the form of a first priority (subject only to Chassis Liens (as defined below) and any other liens which had priority over Comerica's liens on the Petition Date (if any) security interest in all assets of the Debtor's property, cash payments and other protections contained in this Stipulation, as well as a super-priority administrative claim under Section 507(b), subject to the limitations set forth in Section 9 herein.

## **AGREEMENT**

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED as follows:

1.    Acknowledgement of Pre-Petition Loan Documents. The Debtor has reviewed the Pre-Petition Loan Documents in light of the circumstances surrounding Comerica's pre-petition financing of the Debtor. Based upon that review and subject to the rights of other parties in interest to object as provided below, the Debtor hereby stipulates that:

a)    The Pre-Petition Loan Documents are valid and enforceable agreements in accordance with their terms;

b)    The Pre-Petition Obligations are the valid, enforceable, allowable and unavoidable obligations of the Debtor, that such Pre-Petition Obligations are not subject to claims of subordination or recharacterization, that there are no claims, set-offs or defenses to the Pre-Petition Obligations, and that the Pre-Petition Obligations are now due and owing;

-9-

1          c)      Comerica's lien on, and security interest in, the Pre-Petition

2   Collateral is valid, unavoidable, perfected and, except in relation to the potentially prior liens or

3   security interests listed in Schedule 1(c) attached hereto (collectively, the "Chassis Liens"), first in

4   priority; and

5

6          d)      As of the Petition Date, the Pre-Petition Obligations consisted of

7   $22,165,021.65 of principal and accrued and unpaid interest, plus any pre-petition costs, expenses

8   or attorneys fees incurred by Comerica that are recoverable under the terms of the Pre-Petition

9   Loan Documents.

10

11          2.      Objection by Parties in Interest.  No later than 30 days following the entry

12  of a final order on the use of cash collateral (the "Challenge Period"), any party in interest with

13  standing to appear in this proceeding (other than the Debtor) may file and serve upon the Debtor

14  and Comerica any objection to the Pre-Petition Obligations or to Comerica's lien on and security

15  interest in the Pre-Petition Collateral as set forth above.  The final hearing on the use of cash

16  collateral shall occur not later than 30 days after the Petition Date.  If no objections are timely

17  filed and served within the Challenge Period, the Pre-Petition Obligations shall be deemed valid,

18  enforceable, allowable and unavoidable, and not subject to subordination or recharacterization,

19  and Comerica's lien on and security interest in the Pre-Petition Collateral shall be deemed valid,

20  enforceable, unavoidable, perfected and first in priority as set forth above subject only to the

21  Chassis Liens.  In addition, the claim of Comerica shall be deemed allowed, with no right to seek

22  reconsideration of such allowance of claim.

23

24          3.      Release of Comerica Regarding Pre-Petition Obligations.  The Debtor is

25  aware of no grounds and does not assert any pre-petition claims or causes of action against

26  Comerica.  In consideration for the accommodations provided hereunder, but subject to the rights

27  of other parties in interest to object to the Pre-Petition Obligations or to Comerica's security

28

W02-WEST:1GIG1\402994664.5

STIPULATION RE USE OF
CASH COLLATERAL

1   interest in the Pre-Petition Collateral as provided below, the Debtor hereby irrevocably and

2   unconditionally releases and forever discharges Comerica, its attorneys, accountants, consultants,

3   agents, servants, members, officers, directors, shareholders, employees, predecessors, parents,

4   subsidiaries, affiliates, successors and assigns, and all persons acting by, through, under, or in

5   concert with any of them from any and all charges, complaints, claims, and liabilities of any kind,

6   including, without limitation, claims for the recovery of preferential transfers, fraudulent

7   conveyances, or other avoidance actions under federal or state law, including all attorneys' fees,

8   interest, expenses, and costs actually incurred or of any nature whatsoever, known or unknown,

9   suspected or unsuspected, which in any way arise from or relate to the Pre-Petition Loan

10   Documents or the Pre-Petition Obligations. The Debtor agrees that Comerica's claim as to Pre-

11   Petition Obligations is allowed, and the Debtor waives any right to seek reconsideration of its

12   allowance. The Debtor further waives any right to seek to surcharge Comerica's collateral under

13   Section 506(c) of the Bankruptcy Code or under any other legal or equitable basis.

14

15         4.    General Release. To the extent that the releases contained in the foregoing

16   Section 3 are releases to which Section 1542 of the California Civil Code or similar provisions of

17   other applicable law apply, the Debtor waives any and all rights and benefits conferred upon it

18   thereby. Section 1542 provides as follows:

19

20         A general release does not extend to claims which the creditor does not know or

21         suspect to exist in his or her favor at the time of executing the release, which if

22         known by him or her must have materially affected his or her settlement with the

23         debtor.

24   This Section 4 shall not affect the rights of other parties in interest to object to the Pre-Petition

25   Obligations or to Comerica's security interest in the Pre-Petition Collateral in accordance with

26   Section 2.

27

28

W02-WEST:1GIG1\402994664.5

STIPULATION RE USE OF
CASH COLLATERAL

1              5.      Use of Cash Collateral. Subject to the terms and conditions of this

2    Stipulation, Comerica hereby consents to the Debtor's use of Comerica's cash collateral during the

3    Budget Period, and the Debtor is hereby authorized to use Comerica's cash collateral in

4    accordance with the following procedures:

5

6                      a)      Deposit of Cash Collateral. The Debtor agrees that it shall deposit

7    all cash collateral currently in its possession or hereafter received by it into a separate account

8    established solely for the purpose of receiving and holding such deposits (the "Cash Collateral

9    Account"). Comerica's cash collateral shall not be commingled with funds that are the proceeds of

10   the collateral encumbered by the Chassis Liens. Except as provided for herein, the Debtor agrees

11   that it will not use any cash collateral in which Comerica claims an interest without further consent

12   of Comerica or order of the Bankruptcy Court in accordance with Section 363 of the Bankruptcy

13   Code. The Debtor agrees that it shall not have access to and shall not be permitted to use funds

14   held in the Cash Collateral Account which have not been swept to the Operating Account (defined

15   below).

16

17                     b)      Operating Account. At the end of each business day, the lesser of (i)

18   all amounts held in the Cash Collateral Account and (ii) Availability (as defined herein) shall be

19   swept into the Debtor's operating account (the "Operating Account"). The Debtor may only use

20   cash collateral that is held in the Operating Account and such use must be in compliance with the

21   Approved Budget as defined below, and all other terms set forth herein.

22

23                     c)      Availability. For the purposes of this Stipulation, the term

24   "Availability" shall mean: (i) the Borrowing Base (as defined herein), minus (ii) the current

25   outstanding balance of Pre-Petition Revolving Loans.

26

27

28

W02-WEST:1GIG1\402994664.5                          -12-                          STIPULATION RE USE OF
                                                                                  CASH COLLATERAL

1          d)      The Borrowing Base.  For purposes of this Stipulation, the term

2    "Borrowing Base" shall mean, without duplication, the sum of (except as defined in this

3    Stipulation, all capitalized terms set forth below shall have the meanings given to them in the Loan

4    Agreement):

5

6               1.      Eighty percent (80.0%) of the net amount of Eligible

7    Accounts after deducting therefrom all payments, adjustments and credits applicable

8    thereto; plus

9

10              2.      One hundred percent (100.0%) of the cost of all Base

11   Vehicles which arc not Work in Process or Finished Goods after deducting therefrom all

12   adjustments for age or other factors affecting the value of such Inventory; plus

13

14              3.      One hundred percent (100.0%) of the cost of all Base

15   Vehicles which are Work in Process (but are not Near Completion Work in Process as

16   defined in Section 1.70 of the Loan Agreement) consisting of up to a maximum of one

17   hundred (100) Base Vehicles, after deducting therefrom all adjustments for age or other

18   factors affecting the value of such Inventory; plus

19

20              4.      One hundred fifteen percent (115.0%) of the cost of each

21   Base Vehicle consisting of a limousine or a hearse which is Near Completion Work in

22   Process, excluding the cost of any such conversion or modification, and after deducting

23   therefrom all adjustments for age or other factors affecting the value of such Inventory;

24   plus

25

26              5.      The lesser of (i) one hundred twenty five percent (125.0%)

27   of the cost of each Base Vehicle consisting of Finished Goods that has been fully

28

W02-WEST:1GIG1\402994664.5                    -13-                         STIPULATION RE USE OF
                                                                           CASH COLLATERAL

converted into a finished limousine or a finished hearse, excluding the cost of any such conversion or modification, and after deducting therefrom all adjustments for age or other factors affecting the value of such Inventory, or (ii) eighty percent (80.0%) of the average sale price of such Inventory, based upon the audit of such Inventory sales for the prior six (6) month period conducted pursuant to Section 6.7 of the Loan Agreement; plus

6.      One hundred fifty five percent (155.0%) of the cost of each Base Vehicle consisting of a recreational vehicle or a bus which is Near Completion Work in Process, excluding the cost of any such conversion or modification, and after deducting therefrom all adjustments for age or other factors affecting the value of such Inventory; plus

7.      The lesser of (i) one hundred sixty five percent (165.0%) of the cost of each Base Vehicle consisting of Finished Goods that has been fully converted into a finished recreational vehicle or a finished bus, excluding the cost of any such conversion or modification, and after deducting therefrom all adjustments for age or other factors affecting the value of such Inventory, or (ii) eighty percent (80.0%) of the average sale price of such Inventory, based upon the audit of such Inventory sales for the prior six (6) month period conducted pursuant to Section 6.7 of the Loan Agreement; plus

8.      The lesser of (i) Borrowing Base Real Property Equity, or (ii) Three and One Half Million Dollars ($3,500,000.00); plus

9.      The Overformula Amount.

10.      Anything contained in the foregoing to the contrary notwithstanding, Bank may adjust the Borrowing Base percentages and the definition of

W02-WEST:1GIG1\402994664.5                                -14-                                STIPULATION RE USE OF
CASH COLLATERAL

1    Eligible Accounts, Borrowing Base Real Property Equity, Base Vehicles, Work in Process

2    and finished conversion for eligible advances, in each case as provided for under Section

3    6.7 of the Loan Agreement.

4

5        11.    As used herein, the term "Base Vehicle" shall mean any new

6    motor vehicle in its original state as manufactured, that has not been previously registered

7    or titled in any State, is located in the United States of America, is free of any liens other

8    than liens in favor of Bank, and Bank holds the original certificate of title for such vehicle,

9    and to the extent such vehicle is associated with a purchase order in which a customer has

10    made a deposit, the value of such deposit is deducted from the cost of such vehicle.

11

12        e)    Approved Budget. The Debtor may utilize cash collateral only for

13    the purpose of paying the projected expenses of its post-petition operations, the costs of operating

14    its bankruptcy estate, the fees and expenses of the professionals employed by the Debtors and the

15    Official Committee of Unsecured Creditors, and the fees owing to the Office of the United States

16    Trustee and the Clerk of the Bankruptcy Court, all as set forth in its budget, a true and correct

17    copy of which is attached hereto as Exhibit "H" and its terms are incorporated herein in full by this

18    reference (the "Approved Budget"). The Approved Budget specifies, on a weekly basis, by

19    amount, type and kind, all expenses anticipated by the Debtor for the Budget Period. Upon

20    expiration of the Budget Period, the Debtor shall immediately cease its use of cash collateral held

21    in the Operating Account, unless the Budget Period is extended by further stipulation of Comerica

22    and the Debtor, or such continued use of cash collateral is authorized by the Court.

23

24        f)    Reporting Requirements. The Debtor agrees to provide Comerica

25    with the following certificates, schedules and reports, each in form and substance satisfactory to

26    Comerica within 2 business days following the end of the week shown in the Approved Budget,

27    written weekly reports for the prior week that include: (A) sources and uses of all cash; (B)

28

1 projected cash budget (including all revenues and expenses); (C) actual expenses (including all
2 revenues and expenses); (D) weekly budget variance showing weekly and cumulative post-petition
3 actual and budgeted receipts and disbursements, and variances from Approved Budget for each
4 item, in form and content satisfactory to Comerica and containing such level of detail (which may
5 be more detailed that the Approved Budget) as Comerica may reasonably require, (E) weekly
6 collateral reports, including account receivable agings, as well as reports describing the aggregate
7 balance of the Debtor's inventory and equipment; (F) a Borrowing Base Certificate (as defined in
8 the Loan Agreement); (G) the cost and the MSRP pricing of each item of inventory listed on the
9 Borrowing Base Certificate (as defined in the Loan Agreement); (H) the average selling price for
10 the rolling 6-month period ended on the date of such report; (I) a production log and certification
11 as to percentage completion of each Base Vehicle; and (K) original titles for any new inventory
12 added to the Borrowing Base.

13

14            g)      Compliance with Approved Budget. If during any weekly reporting
15 period, the Debtor's use of cash collateral from the Operating Account exceeds the Approved
16 Budget by more than 10% in the aggregate, by more than 15% in respect of any specific budget
17 item, or upon the occurrence of any Event of Default hereunder, Comerica shall not be obligated
18 to permit, and the Debtor shall not be entitled to the continued use of cash collateral, without
19 Comerica's prior written consent which may be withheld in Comerica's sole and absolute
20 discretion, or further order of the Court.

21

22            h)      Continuing Right to Use Cash Collateral. The Debtor's right to
23 continue to use Comerica's cash collateral pursuant to the terms of this Stipulation shall be
24 contingent upon the Debtor's compliance with each and every provision of this Stipulation.

25

26

27

28

W02-WEST:1GIG1\402994664.5                          -16-                          STIPULATION RE USE OF
                                                                                  CASH COLLATERAL

1          6.    Waiver of Defaults. Comerica may, in the exercise of its sole discretion,

2   temporarily waive defaults under Sections 5(d), (e) and (f) of this Stipulation without affecting

3   Comerica's rights hereunder.

4

5          7.    Disposition of Sale Proceeds; Relief from Stay. Any order approving the

6   sale of assets of the Debtor in this case shall provide for the payment of the sale proceeds at

7   closing, as follows:

8

9          First, (A) to Comerica in the amount of the Pre-Petition Loans, Pre-Petition

10  Swap Obligations, Pre-Petition L/C Obligations (except to the extent such obligations have

11  previously been repaid or are assumed by the purchaser in a transaction acceptable to Comerica,

12  and (B) to any other senior lien holder (whose collateral is being sold pursuant to such sale) the

13  value of such senior lien holder's allowed secured claim (except to the extent such obligations are

14  assumed by the purchaser);

15

16         Second, to the Debtor $500,000 (the "Estate Funds"), which Estate Funds

17  shall remain with the Debtor's estate to be used to fund the wind down of the Debtor's estate and

18  to distribute the remaining balance to claim holders in accordance with their priorities under the

19  Bankruptcy Code under what is expected to be a liquidating plan of reorganization, with Comerica

20  agreeing that the Estate Funds shall be free and clear of any of Comerica's liens;

21

22         Third, to the debtor-in-possession financing lender in an amount equal to

23  the outstanding amounts due under the applicable debtor-in-possession financing documents;

24

25         Fourth, to Comerica in the amount of the remaining Pre-Petition

26  Obligations; and

27

28
                                         -17-                    STIPULATION RE USE OF
    W02-WEST:1GIG1\402994664.5                                  CASH COLLATERAL

1    Fifth, to the Debtor.

2

3  Furthermore, if no objection to the Pre-Petition Obligations or to Comerica's lien on and security

4  interest in the Pre-Petition Collateral is timely filed during the Challenge Period, Comerica agrees

5  that it shall not receive any portion of the Estate Funds on account of any unsecured deficiency

6  claim of Comerica or otherwise. If an objection to the Pre-Petition Obligations or to Comerica's

7  lien on and security interest in the Pre-Petition Collateral is timely filed during the Challenge

8  Period, Comerica shall have the right to assert an unsecured deficiency claim against the Debtor's

9  estate to share in the Estate Funds on a pro rata basis with other general unsecured creditors to the

10  extent any such unsecured deficiency claim in favor of Comerica is allowed by the Court.

11

12    8.    Replacement Lien and Adequate Protection. Comerica has approved the

13  Debtor's use of Comerica's cash collateral for expenses listed in the Approved Budget, and in

14  compliance with the Borrowing Base, for the Budget Period. Comerica shall have a replacement

15  post-petition lien and security interest upon all present and future personal property assets of the

16  Debtor (other than those assets specifically described below which shall not constitute Post-

17  Petition Collateral and subject to the Carve-Out described below), which assets include without

18  limitation, all of the Debtor's "Collateral" as defined in the Loan Agreement, which includes all

19  "Accounts", "Inventory", "General Intangibles", "investment property" and all other tangible and

20  intangible personal property of the Debtor, together with a lien on all causes of action to the same

21  extent, validity and priority as Comerica's pre-petition liens (collectively, the "Post-Petition

22  Collateral"). The Debtor acknowledges and shall not contest the validity, perfection and priority

23  of Comerica's liens upon and security interests in the Pre-Petition Collateral and the Post-Petition

24  Collateral. It is expressly understood and agreed between the Debtor and Comerica that

25  Comerica's consent to use of its cash collateral is expressly limited during the Budget Period and

26  that there is no other or further consent or commitment being given to use of Comerica's cash

27

28

W02-WEST.1GIG1\402994664.5    -18-    STIPULATION RE USE OF
CASH COLLATERAL

1 collateral. The Post-Petition Collateral shall not include any avoidance causes of action which
2 belong to the Debtor's estate.

3

4          9.     Perfection of Post-Petition Liens. The liens and security interests granted
5 pursuant to this Stipulation are hereby deemed effective, valid, and perfected as of the date of the
6 entry of the order approving this Stipulation without the necessity of filing by any person of any
7 additional documents or other instruments or the taking of any additional action otherwise
8 required to be filed or taken under applicable nonbankruptcy law for the perfection of security
9 interests or mortgages. Such validity and perfection shall be binding upon any successor entity or
10 entities of the Debtor or subsequently appointed trustee in this Chapter 11 case or any Chapter 7
11 case into which this case may be converted, and upon any and all other creditors of the Debtor
12 who have extended or may hereafter extend credit to the Debtor, or assert a claim of any nature or
13 in any manner whatsoever in this bankruptcy case or any superseding bankruptcy case of the
14 Debtor, or any other person or entity, whether or not notice of filing of this bankruptcy case or any
15 order approving this Stipulation has been filed in any county or other political or administrative
16 subdivision in which assets of the Debtor are or may ever be located. Notwithstanding the
17 foregoing, and notwithstanding perfection pursuant to this section, the Debtor shall execute such
18 perfection documents and take such perfection actions as Comerica may reasonably request from
19 time to time.

20

21         10.     Superpriority Claim. In addition to the liens described above, Comerica
22 shall also have the highest administrative priority under Section 507(b) of the Bankruptcy Code
23 above all administrative expenses incurred in this Chapter 11 case or subsequent Chapter 7 case,
24 including such administrative expenses of the kind specified in or authorized pursuant to Sections
25 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b) and 726 of the Bankruptcy Code, resulting from
26 any post-petition diminution in the value of Comerica's collateral.

27

28

W02-WEST:1GIG1\402994664.5            -19-                   STIPULATION RE USE OF
CASH COLLATERAL

1           11.    No Challenges or Modification. The Debtor shall not in any manner

2 challenge or attempt to avoid or subordinate Comerica's claims against the Debtor under this

3 Stipulation or the Pre-Petition Loan Documents, nor attempt to avoid the validity, perfection or

4 priority of any security interests granted by the Debtor to Comerica pursuant to this Stipulation, all

5 of which are hereby confirmed. The Debtor shall not seek to modify the provisions of this

6 Stipulation under a Chapter 11 plan.

7

8           12.    Conflicts. To the extent of any inconsistencies between the terms and

9 provisions of this Stipulation and the Pre-Petition Loan Documents, the terms of this Stipulation

10 shall govern. In all other respects, the Pre-Petition Loan Documents shall remain in full force and

11 effect and Comerica shall continue to have all of the interests, rights and remedies provided in the

12 Pre-Petition Loan Documents as modified hereby.

13

14           13.    Application of Proceeds. All proceeds from Post-Petition Collateral shall

15 first be applied to reduce any Post-Petition Loss and then to reduce the Pre-Petition Obligations.

16

17           14.    Events of Default. Any one or more of the following events shall constitute

18 an "Event of Default" hereunder:

19

20                   a)    the Debtor fails or neglects to perform, keep or observe any of the

21 provisions of Sections 1, 3, 4, 5(a)-(d) and (f)-(g), 6, and 12 of this Stipulation;

22

23                   b)    the Debtor fails or neglects to perform, keep or observe any of the

24 provisions of Section 5(e) of this Stipulation, and the same shall remain unremedied for five (5)

25 business days or more;

26

27

28

1        c)      the Debtor breaches any of the other agreements, stipulations, or

2    covenants in this Stipulation (other than the provisions covered by any of the clauses in this

3    section) and the same shall remain unremedied for five (5) business days or more;

4

5        d)      any representation or warranty herein or in any written statement,

6    report, financial statement or certificate made or delivered to Comerica by the Debtor is untrue or

7    incorrect in any material respect as of the date when made or deemed made;

8

9        e)      the assets of the Debtor with a fair market value of $10,000 or more

10   are attached, seized, levied upon or subjected to a writ or distress warrant, or come within the   .

11   possession of any receiver, trustee, custodian or assignee for the benefit of creditors of the Debtor

12   and such condition continues for five (5) business days or more;

13

14       f)      a post-petition final judgment or judgments on account of a post-

15   petition claim for the payment of money in excess of $25,000 in the aggregate at any time are

16   outstanding against the Debtor (which judgments are not covered by insurance policies as to

17   which liability has been accepted by the insurance carrier), and the same are not, within five (5)

18   business days after the entry thereof, discharged or execution thereof stayed or bonded pending

19   appeal, or such judgments are not discharged prior to the expiration of any such stay;

20

21       g)      any material provision of any Pre-Petition Loan Document for any

22   reasons ceases to be valid, binding and enforceable in accordance with its terms;

23

24       h)      the appointment of a trustee or an examiner with enlarged powers

25   (powers beyond those set forth in Sections 1106(a)(3) and (4) of the Bankruptcy Code) in this

26   case;

27

28

W02-WEST:1GIG1\402994664.5                                -21-                          STIPULATION RE USE OF
                                                                                        CASH COLLATERAL

1                  i)       the conversion of this case to a case under Chapter 7 of the

2 Bankruptcy Code;

3

4                  j)       the dismissal of this case without payment of all of the Pre-Petition

5 Obligations;

6

7                  k)       if there is any written pleading sustained by the Court pursuant to

8 which a party in interest invalidates, subordinates or avoids any material portion of Comerica's

9 lien on or security interest in the Pre-Petition Collateral or Post-Petition Collateral or any material

10 reduction or subordination of the Pre-Petition Obligations by reason of avoidance, invalidation,

11 offset or, except as a result of payments, otherwise;

12

13                  l)       except as permitted herein, the use of Comerica's cash collateral

14 under Section 363(c) of the Bankruptcy Code without Comerica's prior written consent or the

15 consent of the Court;

16

17                  m)       any party in interest obtaining relief from the automatic stay

18 applicable under Section 362 of the Bankruptcy Code in this case to exercise its rights as

19 lienholder or secured party against any portion of the Pre-Petition Collateral or Post-Petition

20 Collateral, unless otherwise consented to by Comerica, in writing;

21

22                  n)       an interim order approving this Stipulation ("Interim Order") is not

23 entered by the Bankruptcy Court within five (5) business days following the Petition Date, or a

24 final order acceptable to Comerica ("Final Order") is not entered by the Bankruptcy Court within

25 thirty (30) days following the Petition Date;

26

27

28

1                  o)      an interim order approving the Debtor's debtor-in-possession

2 financing arrangement from National Energy Holdings Limited (the "DIP Financing") is not

3 entered by the Bankruptcy Court within five (5) business days following the Petition Date, a loan

4 in the amount of at least $2,300,000 is not made to the Debtor under the DIP Financing within five

5 (5) business days following the Petition Date, or a final order approving the DIP Financing is not

6 entered by the Bankruptcy Court within thirty (30) days following the Petition Date;

7

8                  p)      a default occurs under Section 10 of the Post-Petition Loan and

9 Security Agreement between Debtor and National Energy Holdings Limited and the same is not

10 cured at least one business day before the expiration of any applicable cure period set forth

11 therein;

12

13                  q)      if the Debtor fails to pay to Comerica the amount of any draw

14 request made in respect of the L/C within seven (7) business days after a conforming draw request

15 is presented to Comerica;

16

17                  r)      the entry of an order by the Bankruptcy Court modifying the Final

18 Order, or priming Comerica's lien or security interest in either the Pre-Petition Collateral or the

19 Post-Petition Collateral under Section 364(d) of the Bankruptcy Code or otherwise;

20

21                  s)      the entry of an order by the Bankruptcy Court amending,

22 supplementing, staying, vacating, rescinding or otherwise modifying the Pre-Petition Loan

23 Documents or the Interim Order or the Final Order without Comerica's written consent;

24

25                  t)      the sale without Comerica's consent of all or substantially all of the

26 Debtor's assets either through a sale under Section 363 of the Bankruptcy Code, through a

27 confirmed Chapter 11 plan, or otherwise;

28

W02-WEST:1GIG1\402994664.5                  -23-                  STIPULATION RE USE OF
CASH COLLATERAL

1          u)    a motion to approve the bidding procedures for the sale of all or

2    substantially all of the Debtor's assets under Section 363 of the Bankruptcy Code, on terms

3    acceptable to Comerica, is not filed within five (5) business days following the Petition Date; or an

4    order approving the sale, on terms acceptable to Comerica, is not entered on or before January 10,

5    2011; or the sale has not consummated on or before January 25, 2010;

6

7          v)    if there is any written objection sustained by the Court to the

8    Motion; or

9

10         w)    the proposal of any Chapter 11 plan inconsistent with this

11   Stipulation.

12

13         15.    Response to Events of Default. Upon the occurrence of an Event of Default

14   which is not cured by the Debtor within three business days following the Debtor's receipt of

15   written notice of default from Comerica, (a) Comerica may immediately cease transferring funds

16   from the Cash Collateral Account to the Operating Account, (b) the Debtor's right to continued

17   use of Cash Collateral shall immediately cease unless the Court orders otherwise, and (c)

18   Comerica shall have the right to seek relief from the automatic stay on an emergency basis,

19   without prejudice to the rights of the Debtor or any other party in interest to oppose any such relief

20   requested by Comerica. Subject to the availability of the Court, the Debtor and Comerica agree

21   that the hearing for the Court to consider any such relief from stay motion filed by Comerica shall

22   be held not later than three days following the date that Comerica has filed the relief from stay

23   motion with the Court.

24

25         16.    Relief From the Automatic Stay. The automatic stay provisions of Section

26   362 of the Bankruptcy Code are vacated and modified, without the need for any further action of

27   Comerica or the Court, to the extent necessary to permit Comerica to give effect to any rights

28

W02-WEST:1GIG1\402994664.5                    -24-                    STIPULATION RE USE OF
                                                                      CASH COLLATERAL

1 || granted in this Stipulation, including, without limitation, to the extent necessary to permit

2 || Comerica to (a) pay all fees and expenses of Comerica, including, without limitation, all attorney's

3 || fees (without the need to file a fee application or otherwise obtain the approval of this Court), (b)

4 || apply sale proceeds to the Pre-Petition Obligations (excluding the Estate Funds), (c) apply the

5 || amounts received in respect of the Debtor's reimbursement obligations under the L/C to the Pre-

6 || Petition L/C Obligations, and (d) debit the Debtor's bank accounts at Comerica for Comerica's

7 || customary cash management and servicing fees as they arise in the ordinary course of business.

8

9 ||        **17.**    Right to Credit Bid. Comerica shall have the right to credit bid up to

10 || $9,000,000 in any sale of the Pre-Petition Collateral or Post-Petition Collateral pursuant to Section

11 || 363 of the Bankruptcy Code, a plan of liquidation or reorganization under Section 1129 of the

12 || Bankruptcy Code, or, in the event the case is converted into a Chapter 7 case, a sale or disposition

13 || by a Chapter 7 trustee under Section 725 of the Bankruptcy Code. The Debtor agrees that any sale

14 || of all or part of the Pre-Petition Collateral and Post-Petition Collateral that does not include an

15 || unqualified right to credit bid up to $9,000,000, as provided for in this section, will not result in

16 || Comerica receiving the indubitable equivalent of its claims and interests.

17

18 ||        18.    Modification of Stipulation. Comerica may seek further protection of its

19 || security interests if Comerica deems necessary in these or any superseding proceedings. Further,

20 || Comerica may agree to modifications to this Stipulation, in its sole discretion.

21

22 ||        19.    Reservation of Rights. Nothing herein constitutes consent by Comerica to

23 || these proceedings or to the continuation thereof or to the use of cash collateral except as provided

24 || herein, or constitutes a waiver by Comerica of any right it may have, including, without limitation,

25 || to object to the reasonableness of any fees or costs of professionals described herein, to oppose or

26 || object to any plan of reorganization, to challenge any impairment of its claim, its security interests,

27 || the Pre-Petition Collateral or Post-Petition Collateral, and incident thereto to introduce such

28

W02-WEST:1GIG1\402994664.5                    -25-                    STIPULATION RE USE OF
                                                                      CASH COLLATERAL

1  evidence of its claim, its security interest and the value of the Pre-Petition Collateral or Post-

2  Petition Collateral as may be appropriate in the circumstances.

3

4         20.    Further Assurances. The Debtor shall execute and deliver to Comerica any

5  and all further agreements, instruments and documents which may be reasonably necessary to

6  effectuate the purposes of this Stipulation, including, without limitation, any UCC-1 Financing

7  Statements. Comerica is entitled to reimbursement of all costs of Comerica's searches, title

8  policies or endorsements, recording expenses or other related Comerica expenses.

9

10        21.    Binding Stipulation. The parties agree that this Stipulation shall be

11 submitted to the above-named Bankruptcy Court for its approval. Upon such approval, this

12 Stipulation shall be binding upon and shall inure to the benefit of the parties and their respective

13 successors or assigns, including, without limitation, any Chapter 11 or Chapter 7 trustee in these

14 or any superseding bankruptcy proceedings. All of Comerica's rights and remedies hereunder are

15 not exclusive and are in addition to all rights and remedies provided by law, or by any other

16 agreement between the Debtor and Comerica, or otherwise. If any or all of the provisions of this

17 Stipulation are hereafter modified, vacated or stayed by order of this or any other court, such stay,

18 modification or vacation shall not affect the validity of any debt to Comerica incurred pursuant to

19 this Stipulation and which is incurred prior to the effective date of such stay, modification or

20 vacation, or the validity and enforceability of any lien or priority authorized hereby, and

21 notwithstanding such stay, modification or vacation, any use of funds occurring pursuant to this

22 Stipulation prior to the effective date of such modification, stay or vacation, to or for the benefit of

23 the Debtor, shall be governed in all respects by the original provisions of this Stipulation, and

24 Comerica shall be entitled to all the rights, privileges and benefits, including the liens and security

25 interests and priorities granted herein, with respect to all such advances.

26

27

28

W02-WEST:1GIG1\402994664.5                         -26-                        STIPULATION RE USE OF
                                                                                    CASH COLLATERAL

1          22.    Carve Out for Professionals. Comerica consents, notwithstanding its lien,

2 security interest and administrative expense priority, to the payments by the Debtor of professional

3 fees and expenses in the amounts set forth in the Approved Budget, which amounts shall be

4 capped at $200,000 to the Debtor's bankruptcy counsel, $100,000 to the Debtor's financial

5 advisor, $20,000 to the Debtor's litigation counsel, and $100,000 to professionals employed by an

6 Official Committee of Unsecured Creditors, recognizing that such capped amounts are in addition

7 to, and not inclusive of, any pre-bankruptcy retainers paid to any such professionals. Comerica

8 consents to the payments to such professionals in accordance with the timing set forth in the

9 Amended Budget, recognizing that all such professionals will be required to maintain such sums

10 in segregated trust accounts pending Court approval of fees and expenses, at which time

11 professionals shall have the authority to transfer such sums from the professionals' respective trust

12 accounts to their respective general accounts. Professionals employed by an Official Committee

13 of Unsecured Creditors shall have the authority to use the sums paid to them from the Approved

14 Budget to investigate and analyze the Pre-Petition Loan Documents and Comerica's Pre-Petition

15 Collateral, but such professionals may not use or be paid from any such sums to commence any

16 action or other proceeding for the purpose of, or which may result in, challenging the amount,

17 allowability, avoidability, enforceability, validity, perfection or priority of the Pre-Petition

18 Obligations or the Pre-Petition Collateral. The ultimate allowance of any professional fees and

19 expenses shall be subject to application, notice and allowance by the Bankruptcy Court. Comerica

20 shall have the right to object to the allowance by the Court of any such professional fees and

21 expenses, but Comerica may not object to the payment of any such professional fees and expenses

22 which are allowed by the Court, subject to the amounts contained in the Approved Budget.

23 Notwithstanding all of the foregoing, if this Stipulation is terminated by Comerica as a result of

24 the occurrence of an Event of Default which is not timely cured by the Debtor, the total amount of

25 money available to be funded to all professionals employed by the Debtor's estate after the date of

26 receipt of notice of the Event of Default from Comerica shall be $200,000, which sum shall be in

27

28

-27-                                   STIPULATION RE USE OF
                                                                                                                                    CASH COLLATERAL

1  addition to all amounts funded by the Debtor prior to the date of receipt of notice of the Event of

2  Default from Comerica.

3

4          23.      Integration.  The Pre-Petition Loan Documents and this Stipulation

5  constitute the complete agreement of the parties with respect to the subject matter thereof and may

6  not be modified, altered or amended except by an agreement in writing executed by the Debtor

7  and Comerica.  No amendment or waiver shall be effective unless the same shall be in writing.

8

9          24.      Miscellaneous.  This Stipulation may be executed in any number of

10  counterparts and by different parties on separate counterparts, each of which, when executed and

11  delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute

12  but one and the same agreement.  The Debtor and Comerica anticipate executing this Stipulation

13  in counterparts in separate locations, delivering a copy of the executed counterpart signature pages

14  hereof to each other by facsimile, and subsequently delivering to each other originals of the

15  executed signature pages.  The Debtor and Comerica hereby agree that this Stipulation shall be

16  deemed effective upon Comerica's receipt by facsimile of a copy of the signature page hereof

17  executed by the Debtor, and no subsequent delay or failure by either party hereto to deliver to the

18  other party hereto such party's original signature page shall diminish the effectiveness of this

19  Stipulation.

20  Dated: November 19, 2010

21

22                                         LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.

23

                                 By      /s/ Ron Bender
24                                              RON BENDER, Esq.

25                                         Attorneys for Debtor and Debtor-in-Possession,
                                           KRYSTAL KOACH, INC.
26

27

28
                                                    -28-                              STIPULATION RE USE OF
       W02-WEST:1GIG1\402994664.5                                                    CASH COLLATERAL

Dated: November 19, 2010

MICHAEL F. MILLS, Esq.

By _____
       MICHAEL F. MILLS, Esq.

General Counsel,
KRYSTAL ENTERPRISES

Dated: November 19, 2010

EDWARD P. GRECH

By _____
       EDWARD P. GRECH

Dated: November 17, 2010

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____
       KYLE MATHEWS

Attorneys for Secured Creditor,
COMERICA BANK

W02-WEST:1GIG1\402994664.5

STIPULATION RE USE OF
CASH COLLATERAL

## Schedule 1(c)

7.    Pursuant to an Intercreditor Agreement (Chassis Financing) dated as of January 12, 2004 ("Ford Intercreditor Agreement") between Comerica and Ford Motor Credit Company ("Ford"):  (a) Comerica agreed, on the terms set forth therein, to subordinate its security interest in any "Chassis" (as defined in the Ford Intercreditor Agreement) financed by Ford and "Proceeds" (as defined in the Ford Intercreditor Agreement) thereof until such "Chassis" are paid for by the Debtor; and (b) Ford agreed to terminate its security interest in such "Chassis" upon payment thereof and acknowledged Comerica's senior security interest in the same.

8.    Pursuant to an Intercreditor Agreement (Chassis Financing) dated as of May 26, 2010 ("Westrux Intercreditor Agreement") between Comerica and Westrux International Inc. ("Westrux"):  (a) Comerica agreed, on the terms set forth therein, to subordinate its security interest in any "Chassis" (as defined in the Westrux Intercreditor Agreement) financed by Westrux until such "Chassis" are paid for by the Debtor; and (b) Westrux agreed to terminate its security interest in such "Chassis" upon payment thereof and acknowledged Comerica's senior security interest in the same.

STIPULATION RE USE OF
CASH COLLATERAL