| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| RON BENDER (SBN 143364)<br>PHILIP A. GASTEIER (SBN 130043)<br>KRIKOR J. MESHEFEJIAN (SBN 255030)<br>LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.<br>10250 Constellation Boulevard, Suite 1700<br>Los Angeles, California 90067<br>Tel: (310) 229-1234; Fax: (310) 229-1244 | |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

| In re:<br><br>    KRYSTAL KOACH, INC.,<br><br><br>Debtor(s). | CASE NO.:  8:10-bk-26547-RK<br><br>Chapter 11 |
|---|---|

## NOTICE OF SALE OF ESTATE PROPERTY

| **Sale Date:** Auction Date: 1/4/2011;  Hearing on Sale:1/6/2011 | **Time:** Auction Time: 10:00 a.m.;  Hearing Time: 2:00 p.m. |
|---|---|

**Location:** Auction: Levene, Neale, Bender, Yoo & Brill L.L.P., 10250 Constellation Blvd., Suite 1700, Los Angeles, CA 90067

Sale Hearing:  Courtroom 5D, 411 West Fourth Street, Santa Ana, CA 92701

Type of Sale:  ☑ Public     ☐ Private     Last date to file objections:
_____12/23/10_____

Description of Property to be Sold:  SUBSTANTIALLY ALL ASSETS OF KRYSTAL KOACH, INC.

SEE  NOTICE ATTACHED HERETO AS EXHIBIT "1" FOR ADDITIONAL DETAILS.

Terms and Conditions of Sale:  SEE NOTICE ATTACHED HERETO AS EXHIBIT "1".

Proposed Sale Price:  SEE NOTICE ATTACHED HERETO AS EXHIBIT "1".

Overbid Procedure (If Any):  SEE COURT ORDER APPROVING OVERBID PROCEDURES, WHICH ORDER INCLUDES A
COPY OF THE OVERBID PROCEDURES, ATTACHED HERETO AS EXHIBIT "2".

If property is to be sold free and clear of liens or other interests, list date, time and location of hearing:

Contact Person for Potential Bidders (include name, address, telephone, fax and/or e:mail address):

Lawrence Perkins
El Molino Advisors, Inc.
520 South Grand Avenue, Suite 665
Los Angeles, California 90071
Tel: (213) 291-2547     Email: lperkins@elmolinoinc.com

Date:  12/16/10

**EXHIBIT 1**

1   RON BENDER (SBN 143364)
    PHILIP A. GASTEIER (SBN 130043)
2   KRIKOR J. MESHEFEJIAN (SBN 255030)
    LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
3   10250 Constellation Boulevard, Suite 1700
    Los Angeles, California 90067
4   Telephone: (310) 229-1234
    Facsimile:  (310) 229-1244
5   Email: rb@lnbyb.com; pag@lnbyb.com; kjm@lnbyb.com
6
7   Proposed Counsel for Chapter 11 Debtor
    and Debtor in Possession
8

9                   UNITED STATES BANKRUPTCY COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11                       SANTA ANA DIVISION

12  In re:                              ) Case No. 8:10-bk-26547-RK
                                        )
13  KRYSTAL KOACH, INC.,                ) Chapter 11 Case
                                        )
14        Debtor and debtor in possession. ) NOTICE OF DEBTOR'S MOTION FOR
                                        ) ENTRY    OF    AN    ORDER:    (A)
15                                      ) AUTHORIZING    THE    SALE    OF
                                        ) SUBSTANTIALLY   ALL    OF    THE
16                                      ) DEBTOR'S ASSETS FREE AND CLEAR
                                        ) OF LIENS, CLAIMS, ENCUMBRANCES
17                                      ) AND INTERESTS; (B) AUTHORIZING
                                        ) AND APPROVING ASSUMPTION AND
18                                      ) ASSIGNMENT    OF    EXECUTORY
                                        ) CONTRACTS   AND   LEASES;   (C)
19                                      ) GRANTING RELATED RELIEF
                                        )
20                                      )
                                        )
21                                      ) **HEARING SCHEDULE**
                                        ) Date:      January 6, 2011
22                                      ) Time:      2:00 p.m.
                                        ) Place:     Courtroom 5D
23                                      )            411 West Fourth Street
                                        )            Santa Ana, CA 92701-4593
24                                      )
                                        )
25

26

27

28

1

1      TO THE HONORABLE ROBERT KWAN, UNITED STATES BANRUPTCY JUDGE;

2      ALL CREDITORS; ALL PARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED

3      LEASES PROPOSED TO BE ASSUMED AND ASSIGNED; PARTIES REQUESTING

4      SPECIAL NOTICE; OTHER PARTIES IN INTEREST; AND THE OFFICE OF THE UNITED

5      STATES TRUSTEE:

6      PLEASE TAKE NOTICE that a hearing will be held at the above-referenced date, time

7  and location, for the Court to consider approval of the Motion For Entry Of An Order: (A)

8  Authorizing The Sale Of Substantially All Of The Debtor's Assets Free And Clear Of Liens,

9  Claims, Encumbrances And Interests; (B) Authorizing and Approving Assumption and

10  Assignment of Executory Contracts and Leases; And (C) Granting Related Relief (the "Motion")

11  filed by Krystal Koach, Inc., a California corporation, the debtor and debtor in possession in the

12  above-captioned Chapter 11 bankruptcy case (the "Debtor").

13      The Motion seeks approval of the sale of substantially all assets of the Debtor (the

14  "Sale") pursuant to the Asset Purchase Agreement dated November 19, 2010, between the

15  Debtor and Krystal Infinity, LLC ("Krystal Infinity" or, as the successful bidder, the "Buyer"), as

16  amended by Amendment No. 1, dated December 16, 2010 (the "Sale Agreement"), or on such

17  modified terms as may be presented by another bidder and approved by the Court as the highest

18  and best offer. A copy of the Sale Agreement is attached as Exhibit "A" to the Declaration of

19  Edward P. Grech which is annexed to the Motion (the "Grech Declaration").

20      A list of all executory contracts and unexpired leases proposed to be assumed and

21  assigned to the Buyer and the amount of money that the Debtor believes needs to be paid to other

22  parties to the assumed contracts and assumed leases to satisfy the cure requirements of Section

23  365(b) of the Bankruptcy Code is included in the Motion and supported by the Declaration of

24  Walter Bowser filed concurrently with the Motion (the "Bowser Declaration").

25      In support of the Motion, the Debtor will rely on the Grech Declaration, the Bowser

26  Declaration, the Declarations of Lawrence R. Perkins and Dr. Winston Chung, the exhibits

27

28

thereto, the pleadings and papers on file in this case, and such other evidence and argument which may be presented to the Court prior to or at the hearing.

**Any party who is interested in presenting a higher and better offer for the acquired Assets described in the Motion, or reviewing Sale Procedures, should contact the Debtor's Financial Advisor, El Molino Advisors Inc.: Contact, Lawrence R. Perkins; Telephone 213-291-2547; email lperkins@elmolinoinc.com.**

## Background Information

As further described in the Motion, the Debtor is one of the largest independent manufacturers of stretch limousines and customer shuttle buses in the United States, and an industry pioneer. The Debtor showed consistent and formidable growth from its inception until 2007. After expanding to three facilities in the Southern California region, with more than 800 employees and almost $150 million in annual revenue, starting in 2007, the Debtor began to see a drop in revenue caused as a result of various external factors, including the economic recession. Revenues fell to approximately $100 million in 2008 and $35 million in 2009.

The Debtor has attempted to counteract these forces through the implementation of various cost-cutting measures. The Debtor has reduced the number of its employees to approximately 100. Additionally, starting in 2009, the Debtor closed two of its manufacturing locations in Southern California and began to outsource a majority of its vehicle manufacturing work to a sister company – Krystal International, S.A. DE C.E. (a Mexican company) ("KI"). Nevertheless, losses continued due to historical debt and administrative cost levels, and the Debtor was forced to seek an outside investor or buyer. The Debtor negotiated a sale of its assets, and an interim loan to enable it to operate through closing of a sale. In order to continue operation and implement these agreements, the Debtor filed under Chapter 11 of the Bankruptcy Code on November 19, 2010.

## The Debtor's Primary Assets

The Debtor's primary assets consist of: (a) vehicle and parts inventory with a book value of approximately $10.4 million as of the Petition Date; (b) furniture, fixtures, leasehold

improvements, machinery, tools and equipment with a depreciated book value of approximately $1.6 million as of the Petition Date; (c) accounts receivable with a book value of approximately $262,000 as of the Petition Date; (d) a limited number of patents and trademarks relating to its business; and (e) ownership interest in Edson Financial, Inc. ("Edson"), which provides equipment and vehicle financing to, among others, customers of the Debtor.

The Debtor's inventory value included approximately $1.3 million in work in process which would be of questionable value if the Debtor ceased operation, and approximately $3.4 million in parts inventory. The Debtor's finished goods inventory is limited as most vehicles are made to fill orders. The Debtor believes that its inventory would be valued at less that 50% of book value at liquidation. A substantial portion of the book value of Debtor's furniture, fixtures, leasehold improvements, machinery, tools and equipment is in the leasehold improvements listed on a cost basis, which value would not be realizable in a liquidation scenario. The Debtor's furniture, machinery, tools and equipment were recently valued (in place) by an outside appraiser at approximately $1.575 million. The Debtor estimates that its furniture, fixtures, leasehold improvements, machinery, tools and equipment would likely be valued at less than 25% of book value at liquidation. Based on historical experience, the Debtor estimates that 80-90% of its receivable are collectible. The value of patents and trademarks is likely tied to a going business.

The Debtor is the sole shareholder of Edson. Edson leases or provides purchase financing for vehicles including Krystal products. Edson originates and services vehicle and equipment financings, which have in the past included Wells Fargo, Bank of America, and other large financial institutions. Edson collects a fee for originating loans for the other financial institutions and uses that monetary spread to finance the costs associated with servicing the account. The Debtor has agreed to guarantee certain losses or to be directly responsible for Edson originations. The aggregate exposure of the Debtor in connection with such agreements or guarantees is estimated by the Debtor at approximately $5.968 million, including amounts currently in default. Edson's balance sheet liabilities exceed its balance sheet assets by

1  approximately $1.323 million after elimination of amounts due from the Debtor.   The Debtor

2  does not believe that Edson has any stand alone value.

3  **The Debtor's Primary Liabilities**

4  Petition Date obligations related to Comerica Bank, the Debtor's primary secured

5  creditor, consist of the following:

6  a. "Revolving Loan" –$7,398,301.81.

7  b. "Installment Loan" –$878,762.36.

8  c. "Swap Obligations" –$42,000.   This is a current payoff estimate under a swap

9  agreement.  The ultimate amount could be more or less.

10  d. "L/C Obligations" –$907,314. This is an obligation related to the letter of credit in

11  favor of the Debtor's worker's compensation carrier (the "W. Comp. LC").

12  e. "Guaranties" - The Debtor has also guarantied various loans and obligations

13  owing to Comerica by the Debtor's shareholder and the entity which owns the

14  Debtor's headquarters building.  The estimated total amount of the obligations

15  subject to these guarantees exceeds $13.9 million.

16  As security for the Revolving Loan, Installment Loan, Swap Obligations, L/C

17  Obligations, and Guaranties, Comerica asserts a first priority security interest in all of the

18  Debtor's assets.  Additionally, the Debtor owes approximately $1,390,832 to Ford Motor Credit

19  Company ("Ford Credit") pursuant to a line of credit with Ford Credit.  Ford Credit asserts a

20  security interest in the chassis which it financed and proceeds thereof.    Finally, the Debtor has

21  liabilities to trade creditors of approximately $2.6 million.  In addition, the Debtor is liable on an

22  unsecured loan of $853,000; liability for deposits of approximately $1,000,000 (most of which is

23  an accounting offset against balance sheet inventory value); indebtedness to affiliate entities or

24  individuals in excess of $8 million; in excess of $5.9 million of contingent liability in connection

25  with Edson; approximately $5.0 million in contingent   liabilities under guaranties of

26  indebtedness for its headquarters building (and liability under its lease); potential liabilities in

27  pending lawsuits, which are subject to insurance coverage; and vehicle financing loans and other

28

1   miscellaneous liabilities.  The Debtor has excess insurance policies with applicable limits of

2   $10,000,000, subject to $100,000 retention per claim.  The Debtor believes that potential liability

3   for some periods may exceed applicable limits.

4   **Relevant Post-Petition Financing and Cash Collateral Provisions**

5   Currently, the Debtor does not have access to sufficient funds to continue operations for

6   more than a very short period of time, which is why the Debtor sought Court approval of $2.5

7   million in debtor-in-possession financing. The entire line of $2.5 million has been drawn.  The

8   Cash Collateral Stipulation entered into by the Debtor with Comerica (the "Cash Collateral

9   Stipulation") requires that the Debtor obtain entry of an order approving the sale, on terms

10  acceptable to Comerica, on or before January 10, 2011; and consummate the sale on or before

11  January 25, 2011.   Correspondingly, the Sale Agreement and the DIP Financing Agreement

12  require that the Debtor close the sale on or before January 26, 2011.

13  Pursuant to the Cash Collateral Stipulation, any order approving the sale of assets of the

14  Debtor in this case shall provide for the payment of the sale proceeds at closing, as follows: First,

15  (A) to Comerica in the amount of the Pre-Petition Loans, Pre-Petition Swap Obligations, Pre-

16  Petition L/C Obligations (except to the extent such obligations have previously been repaid or

17  are assumed by the purchaser in a transaction acceptable to Comerica, and (B) to any other

18  senior lien holder (whose collateral is being sold pursuant to such sale) the value of such senior

19  lien holder's allowed secured claim (except to the extent such obligations are assumed by the

20  purchaser); second, to the Debtor $500,000 (the "Estate Funds"), which Estate Funds shall

21  remain with the Debtor's estate to be used to fund the wind down of the Debtor's estate and to

22  distribute the remaining balance to claim holders in accordance with their priorities under the

23  Bankruptcy Code under what is expected to be a liquidating plan of reorganization, with

24  Comerica agreeing that the Estate Funds shall be free and clear of any of Comerica's liens; third,

25  to the debtor-in-possession financing lender in an amount equal to the outstanding amounts due

26  under the applicable debtor-in-possession financing documents; fourth, to Comerica in the

27  amount of the remaining Pre-Petition Obligations; and fifth, to the Debtor.

28

1    **Marketing of the Acquired Assets**

2    The Acquired Assets have been marketed for sale for an extended period. The Debtor

3    previously retained a business broker for several years to explore interest in a strategic partner or

4    buyer. In December 2009 the Debtor retained El Molino Advisors, Inc. as financial advisor. El

5    Molino circulated investment and information memoranda containing facts, projections and other

6    relevant information. El Molino arranged for and assembled an electronic data room which was

7    made available to interested buyers or strategic investors. El Molino directly contacted in excess

8    of 20 potentially interested parties, including competitors, industry players and distressed market

9    investors. Although the Debtor reached a tentative understanding with the Buyer's affiliate in

10   late September 2010, these marketing efforts continued and resulted in expressions of interest.

11   However, none of the expressions of interest indicated a level of value to the Debtor equal to that

12   offered by the Buyer.

13   El Molino also made available information regarding the related companies Imperial

14   Highway, LLC ("Imperial"); Krystal Enterprises, LLC ("Enterprise"); and Enterprise's

15   subsidiary, KI. Imperial owns and leases to the Debtor the Debtor's headquarters building. As

16   discussed above, KI performs much of the manufacturing work in Mexico to create the Debtor's

17   product. All of the parties contacted were made aware that all of the related assets could be

18   made a part of any transaction.

19   As discussed in the Motion, the Debtor estimates that the realizable value of its assets is

20   likely less than what is being obtained in the Sale. Moreover, the Debtor lacks the cash flow to

21   continue as a going concern as presently constituted. The alternative to the Sale would appear to

22   be a forced liquidation by the secured creditors. That would undoubtedly result in the assets

23   yielding even less value. If this occurs, there would almost certainly be no value remaining in

24   the estate for the benefit of the unsecured creditors. In addition, the Acquired Assets have been

25   exposed to the market for an extended period and the Sale to the Buyer is subject to higher and

26   better offers.

27   ///

28

**The Asset Purchase Agreement**

By way of summary (and subject to the specific terms of the Sale Agreement, the defined terms in which are incorporated herein by reference), the principal terms of the Sale Agreement are as follows:

a.    The Cash Payment portion of the purchase price is $9,000,000, which is expected to consist of cash in the amount of $6,500,000 and the credit of the DIP Financing provided by the Buyer's affiliate in the amount of $2,500,000, plus the assumption of additional direct indebtedness anticipated to exceed $2.67 million.

b.    The Acquired Assets will include substantially all of the Debtor's assets relating to its business. The Acquired Assets will be sold "as-is," with no representations or warranties surviving closing.

c.    The Sale is subject to higher and better bids and to entry of a final order approving the Sale.

d.    The Acquired Assets will not include: (a) executory contracts which are not specifically listed in the Sale Agreement; or (b) any bank account of Seller solely to the extent it contains proceeds of the Sale (c) the Excluded Assets specifically identified in the Sale Agreement, including but not limited to avoidance actions (other than actions against the Buyer or entities it is acquiring in the Sale and related transactions), tax refunds, insurance policies, non-transferable assets and certain books and records, or any right, property or interest in property not expressly included in the Acquired Assets.

e.    Except to the extent excluded under the Sale Agreement, the Acquired Assets will include, without limitation, cash and bank accounts; inventory; furniture, fixtures and equipment; accounts receivable; contract rights; patents and trademarks; and the Debtor's equity interests in Edson Financial, Inc. (100%) and Imperial Highway, LLC (0.1%).

f.      The Sale Agreement is subject to termination if the Sale is not approved by the Bankruptcy Court by January 12, 2011 or the Sale does not close by January 26, 2011.

g.      The Buyer's obligations to close the Sale are subject to the release or sale free and clear of the liens of Comerica Bank, and entry by the Buyer and Ed Grech in an agreement pursuant to which Grech will transfer all of his right title and interest in Krystal Enterprises, LLC, a Nevada limited liability company (defined above as Enterprise), and Imperial Highway, LLC, a California limited liability to Buyer, in consideration for conveyance to Grech of fifty percent (50%) ownership interest in Buyer. The Buyer and Grech have signed a Contribution Agreement providing for that exchange, contingent on Infinity being the successful bidder for the Debtor's assets and consummating that purchase. Grech will also enter into an employment contract with Infinity under which he will receive a salary of $300,000 per year. The Contribution Agreement also provides for a loan to Grech which will be used to pay down some of his indebtedness to Comerica Bank. That indebtedness was incurred primarily in connection with the business. Comerica has now required that it be paid down, given the developments with the business.

The Agreement contains other provisions, including provisions of the type normally contained in such agreements. The description contained herein is a summary only and is qualified in its entirety by the contents of the Agreement, which will control in the event of any conflict with this summary. All interested parties are urged to review the specific terms of the Agreement.

Other than in connection with the transactions summarized in this Motion, neither the Debtor nor Ed Grech have any relationship with Winston Chung (the principal of Buyer), Thunder Sky (a creditor of the Debtor and an affiliate of the Buyer), Seven One (the DIP Financing lender) or Infinity (the Buyer). The APA was negotiated on behalf of the Debtor at arms length with outside professionals. The Contribution Agreement was separately negotiated.

The Agreement was extensively negotiated between the Debtor and the Buyer in good faith, arms-length negotiations, including exchanges of multiple drafts of asset purchase agreements over an extended period of time. The Debtor has no doubt that the result obtained from the sale of the Acquired Assets to the Buyer is the overwhelmingly optimal result for the Debtor's estate. **The Debtor will conduct an auction sale of the Acquired Assets on January 4, 2011, pursuant to the Sale Procedures Order. The auction will being at 10:00 a.m. and take place at the offices of Levene, Neale, Bender, Yoo & Brill L.L.P., located at 10250 Constellation Blvd., Suite 1700, Los Angeles, California 90067. The Debtor will report the outcome of the auction to the Court on January 6, 2011, at the time of the hearing on the Motion. The Motion's hearing date, time and location are referenced on the first page of this Notice.**

For all of these reasons and those set forth in the Motion, the Debtor believes that selling the Acquired Assets to the Buyer in accordance with the terms of the Agreement or to a successful overbidder (in the event a successful overbid is made at the auction) free and clear of all liens, claims, encumbrances, and interests is in the best interest of creditors. In conjunction with the related agreements with Comerica and the DIP lender, the Sale includes provisions for funding the anticipated fees and expenses of professionals for the Debtor in Possession and the Committee, and for the retention by the estate of $500,000. While the potential for distribution to unsecured creditors cannot be predicted with any precision, the prospects for all creditors, whether secured, priority or general unsecured, are undoubtedly better under the Sale than any available alternative. The Debtor and Comerica therefore engaged in a substantial amount of discussion and negotiation in order to achieve this result.

The alternative to the sale appears to be that the Debtor would have to cease operations, suffer foreclosure of its assets by secured creditors, and presumably, the liquidation sale of its assets. If this occurs, the recovery of secured creditors would be jeopardized, unsecured creditors would very likely receive no distribution whatsoever from this estate, and employees and other creditors who may yet benefit from the ongoing business would suffer further.

**Unexpired Leases And Executory Contracts To be Assumed By The Debtor And Assigned To The Purchaser**

The Debtor's executory contracts and unexpired leases are an important asset of its estate and assumption and assignment of the Contracts to the Buyer meets the business judgment standard and satisfies the requirements of section 365 of the Bankruptcy Code. As discussed above, the transactions contemplated by the Agreement will provide significant benefits to the Debtor's estate. Because the Debtor cannot obtain the benefits of the Agreement without the assumption of the contracts referenced above, the assumption is undoubtedly a sound exercise of the Debtor's business judgment. In addition to the Debtor's lease with Imperial, the contracts to be assumed and assigned to the Buyer are identified in the Motion. The Sale Agreement provides that the Buyer will pay any cure costs. A copy of the Motion has been served on all parties to the contracts to be assumed. The Debtor will not assume the contracts unless the Sale closes.

**In connection with the Motion, the Debtor is requesting an order of the Court providing that the Cure Claims set forth above be the cure amounts which the Buyer must pay to the other parties to the agreements being assumed by the Buyer to enable the Debtor to satisfy the cure requirements of Section 365(b)(1)(A) of the Bankruptcy Code. The Debtor submits that any party that fails to file a timely objection to the Motion should be deemed to have consented to the Debtor's proposed cure amount and be forever barred from challenging the Debtor's proposed cure amount.**

**PLEASE TAKE FURTHER NOTICE** that any objection to <u>any</u> of the relief requested by the Debtor in the Motion must, on or before December 23, 2010, be filed with the Court and served by same day service (unless other arrangements have been made) upon counsel to the Debtor, whose contact information is set forth in the upper, left-hand corner of the first page of this Notice, in compliance with Local Bankruptcy Rule 9013-1(f).

**PLEASE TAKE FURTHER NOTICE** that the Court may deem the failure of any party in interest to file a timely objection to the Motion to constitute consent to <u>all</u> of the relief requested by the Debtor in the Motion.

WHEREFORE, based upon all of the foregoing, the Debtor respectfully requests that the Court:

1.    Approve the Agreement and authorize the Debtor to carry out its terms;

2.    Authorize the sale of the Acquired Assets to the Buyer or such other entity who is found to have submitted a higher and better offer, free and clear of any liens, claims or encumbrance in such Acquired Assets within the meaning of Section 363(f) of the Bankruptcy Code (subject to permitted encumbrances), in exchange for the consideration provided under the Agreement;

3.    Authorize and approve the assumption and assignment by the Debtor of executory contracts and leases to the Buyer on the terms set forth in the Motion, including the cure amounts set forth in the Motion;

4.    Find that the Agreement was negotiated, proposed and entered into by the parties without collusion, in good faith and from arm's-length bargaining positions and that the Buyer has acted in "good faith" within the meaning of Section 363(m) of the Bankruptcy Code and is a good faith buyer entitled to all of the protections afforded by that Section;

5.    Order that the Court shall retain jurisdiction to resolve any controversy or claim arising out of or relating to the Agreement, or the breach thereof;

6.    Provide that the Agreement and the transactions contemplated thereby may be specifically enforced against and binding upon, and not subject to rejection or avoidance by, the Debtor or any chapter 7 or chapter 11 trustee of the Debtor;

7.    Provide that the terms and provisions of the Agreement and the Order approving the Agreement shall be binding in all respects upon all persons, including, but not limited to, the Debtor and its estates and creditors and all governmental bodies;

8.    Authorize the distribution of Sale proceeds in accord with Order of the Court;

1    9.    Waive the 14-day period provided for in the Federal Rule of Bankruptcy

2  Procedure 6004(h); and

3    10.    Grant such other and further relief as the Court deems just and proper.

4  Dated: December 16, 2010

5    KRYSTAL KOACH, INC.

6

7    By: _____*/s/ Philip A. Gasteier*_____
        RON BENDER
8        PHILIP A. GASTEIER
        KRIKOR J. MESHEFEJIAN
9        LEVENE, NEALE, BENDER, YOO
        & BRILL L.L.P.
10       Proposed Attorneys for Chapter 11
        Debtor and Debtor in Possession
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 2**

1 | RON BENDER (SBN 143364)
2 | PHILIP A. GASTEIER (130043)
   | KRIKOR J. MESHEFEJIAN (SBN 255030)
3 | LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
   | 10250 Constellation Boulevard, Suite 1700
4 | Los Angeles, California 90067
   | Telephone: (310) 229-1234
5 | Facsimile: (310) 229-1244
   | Email: rb@lnbyb.com; pag@lnbyb.com; kjm@lnbyb.com

6 | Proposed Counsel for Chapter 11 Debtor and Debtor in Possession

7

FILED & ENTERED

DEC 14 2010

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY kent      DEPUTY CLERK

8

UNITED STATES BANKRUPTCY COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

SANTA ANA DIVISION

11

12 | In re:                                    ) Case No. 8:10-bk-26547-RK
                                               )
13 | KRYSTAL KOACH, INC.,                      ) Chapter 11
                                               )
14 |          Debtor and Debtor in Possession. )
                                               )
15 |                                           ) **ORDER ESTABLISHING SALE**
                                               ) **PROCEDURES FOR SALE OF**
16 |                                           ) **DEBTOR'S ASSETS FREE AND**
                                               ) **CLEAR OF ALL LIENS, CLAIMS,**
17 |                                           ) **ENCUMBRANCES AND OTHER**
                                               ) **INTERESTS PURSUANT TO**
18 |                                           ) **SECTIONS 105 AND 363 OF THE**
                                               ) **BANKRUPTCY CODE**
19 |                                           )
                                               ) Date:    December 7, 2010
20 |                                           ) Time:    4:00 p.m.
                                               ) Place:   Courtroom 5D
21 |                                           )          411 West Fourth Street
                                               )          Santa Ana, CA 92701-4593
22 |                                           )
23 | _____   )

24

25

26

27

28

On December 7, 2010, the Court held a hearing on the motion (the "Motion") filed by Krystal Koach, Inc. (the "Debtor"), the debtor and debtor in possession in the above-captioned chapter 11 bankruptcy case, seeking the entry of an order for an order establishing procedures for the sale of substantially all of the Debtor's assets (collectively referred to herein as the "Sale Property"), free and clear of all liens, claims, encumbrances and other interests pursuant to Sections 105 and 363 of the Bankruptcy Code and granting related relief. Appearances were made at the hearing as set forth on the record of the Court.

Having considered the Motion, the evidence filed in support thereof, no opposition having been filed, and having found notice to have been adequate and appropriate and in accord with Local Bankruptcy Rule 6004-1, and for the findings and reasons set forth on the record,

THE COURT HEREBY ORDERS as follows:

1.    The Motion (Docket #29) is hereby granted in its entirety.

2.    The Debtor is hereby authorized to conduct a sale of the Sale Property following the procedures set forth in Exhibit "A" hereto and incorporated herein by reference.

3.    The Court shall hold a hearing on approval of the sale to the Lead Bidder or other Alternative Transaction (as such terms are defined and more fully described in Exhibit "A" hereto), and to consider objections thereto, if any, on January 6, 2011 at 2:00 p.m.

###

DATED: December 14, 2010

_____
United States Bankruptcy Judge

2

# EXHIBIT "A"

## KRYSTAL KOACH PROPOSED SALE PROCEDURES

1.      El Molino Advisors, Inc ("El Molino"), which is serving as the Debtor's financial advisor and marketing consultant, shall continue to seek and respond to interested purchasers based on the marketing information previously assembled by El Molino, including an electronic "data room" which contains customary information about the Debtors' business.  El Molino will share this information, and such other information as may reasonably be requested, with any prospective buyer who executes a confidentiality agreement (which can be obtained from El Molino) and who demonstrates to El Molino that the prospective buyer has the reasonable financial ability to participate in an auction sale process within the required time frame.  To the extent that viable prospective buyers desire to obtain additional financial information from the Debtor beyond the information that El Molino compiled, El Molino will make every reasonable effort to facilitate providing that additional information to the prospective buyer.


Interested parties should contact Lawrence Perkins of El Molino as follows:

Lawrence Perkins

Email: lperkins@elmolinoinc.com

Phone: 213-291-2547

2.      The actual auction sale (the "Auction") will take place on Tuesday, January 4, 2011 (or two business days prior to the sale hearing date, whichever is later) commencing at 10:00 a.m. at 10250 Constellation Boulevard, 17th Floor, Los Angeles, California 90067 or such other location as determined by El Molino to be in the best interests of the Debtor's estate.

3.      Substantially all of the Debtors' assets are available to be purchased, free and clear of all liens, claims and interests, except for those assets which are designated as "Excluded

3

Assets" in the Asset Purchase Agreement (the "Lead Bidder APA") between the Debtor and

Krystal Infinity, LLC, a Nevada Limited Liability Company (the "Lead Bidder").

     4.    In order to be eligible to participate in the auction sale, a prospective bidder will be

required to do the following: (a) Not less than twenty-four hours prior to the Auction, deliver a

deposit in clear funds in the amount of $500,000 (the "Deposit") to the Debtors' bankruptcy

counsel which will be held in a segregated account and which will be non-refundable in favor of

the Debtor's bankruptcy estate if the bidder is deemed to be the winning bidder at the auction

sale, has its bid (and the Debtor's corresponding asset sale) approved by the Bankruptcy Court,

and fails to close its purchase of the Debtor's assets in a timely manner; (b) be deemed to be

financially qualified to participate in the auction sale by El Molino, the Debtor and secured

creditor Comerica Bank (the "Bank"), with the Bankruptcy Court to be the forum to resolve any

disputes in this regard; (c) deliver to El Molino, counsel for the Bank and counsel for the Debtor,

not less than twenty-four hours prior to the Auction, a written markup of the Lead Bidder APA

showing any proposed changes the buyer has to the Lead Bidder APA, which can be obtained

from El Molino; (d) either in the markup of the Lead Bidder APA,  or separately, deliver to El

Molino, counsel for the Bank and counsel for the Debtor, not less than twenty-four hours prior to

the Auction, a written statement demonstrating a willingness to make an offer with total value in

an amount at least equal to the sum of (x) the value offered by the Lead Bidder; plus (y) the

Breakup Fee identified in paragraph 9 below ($300,000), plus (z)  $100,000 (such sum being

referred to herein as the "Minimum Overbid Amount") (which shall be deemed the bidder's offer

to purchase); and (e) deliver to El Molino, counsel for the Bank and counsel for the Debtor, not

less than twenty-four hours prior to the Auction, (i) a written statement identifying any

connection the prospective bidder has to any member of the Debtor's Board of Directors or senior

management at the time the deposit is delivered or, if the connection arises thereafter, as soon as

4

the connection becomes known; (ii) information as to the identity of the bidder, including if a

corporate or other business entity, the identity of the principals of the bidder entity; and (iii)

current financial statements of the prospective buyer, or such other form of financial disclosure

acceptable to the Debtor, El Molino and the Bank demonstrating the prospective bidder has

sufficient financial resources to close the sale by January 25, 2010. The submitted APA must not

contain any contingencies to the validity, effectiveness and/or binding nature of the offer,

including without limitation, contingencies for financing, due diligence or inspection.

5.    If more than one qualified bidder complies with the requirements of paragraph 4

above and appears at the auction sale, El Molino will randomly assign bidding numbers to the

bidders. The following is how the bidding will work by example if there are three qualified

bidders at the auction sale. The bidder who is assigned bidding #1 will be required to submit the

first bid, unless the Lead Bidder is assigned bidding #1, in which case the bidder who is assigned

bidding #2 will be required to submit the first bid. If the first bid is not equal to or greater than

the Minimum Overbid, the initial bidder shall be out and the bidding will pass to the next

sequential number until a qualified bid is received. Once a bid equal to or greater than the

Minimum Overbid is received, that bid will be deemed a qualified bid and the bidding will then

proceed to the bidder with the next sequential number. That next bidder will then be required to

submit a bid which is at least $100,000 higher than the qualified bid submitted by the first bidder

or drop out of the auction sale. The bidding will then turn to the bidders with the next sequential

numbers and then back to bidder #1 and continue (with bidding increments of at least $100,000)

until all bidders but one have dropped out of the auction sale at which point the bidder who made

the highest bid will be deemed the highest bidder, subject to the Bank's credit bid rights. Once a

bidder elects not to make a bid which is at least $100,000 higher than the previously made

qualifying bid, the bidder will be deemed to have dropped out of the auction and will not be

permitted back into the auction thereafter. If the Bank does not exercise its credit bid rights, the bidder who submitted the second highest bid at the auction sale will be deemed to constitute the winning backup bidder. The Lead Bidder shall not in any manner be deemed the back up bidder unless it specifically agrees to said status in writing.

6.    Notwithstanding any other provision of this Order, the Debtor and the Bank shall collectively decide which bid made at the auction is the highest and best bid for the Debtors' estates with the greatest weight to be given to the amount of cash consideration being received, with any disagreement to be resolved by the Bankruptcy Court.

7.    The Debtor's sale of assets to the winning bidder (or the winning backup bidder if the winning bidder fails to close its purchase in a timely manner) shall be made on an "AS IS WHERE IS" basis with no representations or warranties other than those representations and warranties which are specifically provided for in the asset purchase agreement submitted by the winning bidder (or the winning backup bidder if the winning bidder fails to close its purchase in a timely manner).

8.    The date and time of the hearing for the Bankruptcy Court to consider approval of the Debtor's sale of assets to the winning bidder at the auction sale (as well as any request by the Debtor to assume and assign to the winning bidder any of the Debtor's executory contracts and unexpired leases that the winning bidder wishes to have assigned to it) will be January 6, 2011 at 2:00 p.m. Subject only to entry by the Bankruptcy Court of the sale order, the winning bidder will have until January 25, 2011 to consummate the sale. If the winning bidder fails to do so, the winning bidder will be deemed to have forfeited its Deposit unless the Bankruptcy Court or the Debtor and the Bank agree to provide the winning bidder an extension of time to close. If the winning bidder fails to close and forfeits its Deposit, the winning back up bidder will be notified and will then have fifteen days to close its purchase of the Debtor's assets or will be deemed to

1    have forfeited its deposit unless the Bankruptcy Court or the Debtor and the Bank agree to

2    provide the winning backup bidder an extension of time to close.  The Deposit of the backup

3    bidder will be retained by the Debtor following the conclusion of the auction sale and will be

4    returned to the backup bidder on the earlier to occur of (i) the closing by the winning bidder of its

5    purchase of the Debtor's assets or (ii) January 26, 2011 provided the winning bidder has closed its

6    purchase of the Debtor's assets by that date.

7

8          9.      In the event that a competing bid to acquire all or a substantial part of the Assets is

9    approved by the Court (an "Alternative Transaction") and the Lead Bidder is not the purchaser of

10    the Acquired Assets as a result, the Lead Bidder shall be entitled to be paid an amount equal to

11    the reasonable expenses incurred by Buyer's representatives, agents, employees and attorneys and

12    professionals in connection with its investigation, negotiation, structuring and financing of the

13    Sale (including, but not limited to, legal, accounting, consulting, auditing, and financial advisory

14    fees) in an amount up to and including $300,000 (the "Break-Up Fee"),  provided that, the Break-

15    Up fee shall only be payable if (a) the Lead Bidder agrees in writing at the Auction to be the

16    backup bidder, and (b) the Alternative Transaction closes.  The Break-Up Fee shall be paid from

17    the sale proceeds at the Closing of the Alternative Transaction, or as soon thereafter as any

18    dispute regarding the amount of the Breakup Fee is fully resolved, with such payment to be free

19    and clear of all claims, liens and interests in or on the property of the Debtor or the Bankruptcy

20    Estate. An amount equal to the maximum Breakup Fee of $300,000 shall be set aside from the

21    sale proceeds of the Alternative Transaction until the amount of the Breakup Fee is determined.

22    Any balance of the $300,000 remaining after payment of the Breakup Fee shall be distributed in

23    accord with the Cash Collateral Stipulation between the Debtor and the Bank.

24          10.      All Qualified Bidders shall be deemed to have consented to the core jurisdiction of

25    the Bankruptcy Court and to have waived any right to a jury trial in connection with any disputes

26

27

28

relating to the Auction and/or the Sale. All asset purchase agreements shall be governed by and construed in accordance with the laws of the State of California. All Qualified Bidders shall be bound by their bids until conclusion of the Auction.

11.    The bidding procedures set forth herein (other than those provisions governing the Breakup Fee and bid increments) may be modified without any further order of the Bankruptcy Court provided that the Debtors and the Bank agree to such modifications. Any dispute over any such modifications shall be resolved by the Bankruptcy Court.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067

A true and correct copy of the foregoing document described as ORDER ESTABLISHING SALE PROCEDURES FOR SALE OF DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On          ,I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served): On December 8, 2010, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

**Courtesy Copy Delivered via Federal Express**
Hon. Robert Kwan
U. S. Bankruptcy Court/Santa Ana Division
411 West Fourth Street, Suite 5165
Santa Ana, CA  92701-4593

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on December __, 2010, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| December 8, 2010 | John Berwick | /s/ John Berwick |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2010*                                                                                    F 9013-3.1

9

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled **ORDER ESTABLISHING SALE PROCEDURES FOR SALE OF DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **December 14, 2010**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

- Ron Bender    rb@lnbrb.com
- Frank Cadigan    frank.cadigan@usdoj.gov
- Philip A Gasteier    pag@lnbrb.com
- Michael J Hauser    michael.hauser@usdoj.gov
- Aaron J Malo    amalo@sheppardmullin.com
- Kyle J Mathews    kmathews@sheppardmullin.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Thomas E Shuck    malvarado@pmcos.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Pamela Kohlman Webster    pwebster@buchalter.com
- Michael H Weiss    mw@weissandspees.com, lm@weissandspees.com;jb@weissandspees.com

**II.  SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

Debtor
Krystal Koach Inc
2701 E Imperial Highway
Orange, CA 92821

**TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☒  Service information continued on attached page

10

**

## Secured Creditors and Requests for Special Notice

| | | |
|---|---|---|
| Counsel for Comerica Bank ** | Comerica Bank | Comerica Bank, Successor by Merger |
| Kyle J. Mathews | Attn Director/Officer/Legal Counsel | with Comerica Bank-California |
| Sheppard Mullin Richter & Hampton | 75 E. Trimble Road, MC 4770 | 75 E. Trimble Road, MC 4770 |
| 333 South Hope Street, 43rd Fl. | San Jose, CA 95131 | San Jose, CA 95131 |
| Los Angeles, CA 90071 | | |
| Comerica Bank-California | Comerica Bank-California | Sam Ahmed, First Vice President |
| Attn: Francis Xavier Ferrer | Attn Director/Officer/Legal Counsel | Comerica Bank, MC 4605 |
| 333 W. Santa Clara Street, 12th Fl. | 55 Almaden Blvd. | Western Market |
| San Jose, CA 95113 | San Jose, CA 95113 | 2321 Rosecrans Ave., Suite 5000 |
| | | El Segundo, CA 90245 |
| Ford Motor Company | International Fleet Sales, Inc. | Robert J. Cousins, Esq. |
| Attn: Scott Muse | Attn: Corporate Officer | Quintairos, Prieto, Wood & Boyer |
| PO Box 680020, MD 610 | 476 McCormick Street | One East Broward Blvd., Suite 1400 |
| Franklin, TN 37068 | San Leandro, CA 94577 | Fort Lauderdale, Fl 33301 |
| Ford Motor Credit Company LLC | Bob Dickman Tire Center, Inc. | |
| Attn: Elizabeth J. Marshall | Attn: Corporate Officer | |
| One American Rd. | 221 W 1st Avenue | |
| Dearborn, MI 48126 | Junction City, OR 97448 | |

## 20 Largest Unsecured Creditors

| | | |
|---|---|---|
| Union Bank/Diana Wilson | Finish Masters Paint Supplies | Blackhawk Manufacturing Inc. |
| 445 S. Figueroa Street, Suite 403 | Attn: Corporate Officer | Attn: Corporate Officer |
| Los Angeles CA 90071-0000 | 9162 Rosecrans | 3122 South Riverside Ave. |
| | Bellflower CA 90706-0000 | Bloomington CA 92316-3511 |
| Solomon, Winnett & Rosenfield | Newport Laminates | SE-GI Products, Inc. |
| CPA's Inc. | Attn: Corporate Officer | Attn: Corporate Officer |
| 11777 San Vicente Blvd., Ste 777 | 3121 W. Central Avenue | 1900 Second Street |
| Los Angeles CA 90049-0000 | Santa Ana CA 92704-5302 | Norco CA 92860-0000 |
| JPF Glass Stone | Freedman Seating Company | Wells Fargo Equipment Finance, Inc. |
| Attn: Corporate Officer | Attn: Corporate Officer | ATTN: Brian Borgelt |
| 560 N. Waterman, Unit B | 4451 Solutions Center | 733 Marquette Avenue, 7th Floor |
| San Bernardino CA 92410-0000 | Chicago IL 60677-4004 | Minneapolis MN 55402-0000 |
| US Bancorp Equipment Finance, Inc. | CIT Equipment Finance, Inc. | National Liability and Fire Insuran |
| ATTN: Glenn Trump | ATTN: Sandra Ryan | Kelly, Smith & Murrah, P.C. |
| 13010 SW 68th Parkway | 10201 Centurion Parkway North | 4305 Yoakum Blvd. |
| Portland OR 97223-0000 | Jacksonville FL 32256-0000 | Houston TX 77006-0000 |
| Wabtec - Vapor | Quality Metalcraft, Inc. | Infinite Innovations |
| Attn: Corporate Officer | Attn: Corporate Officer | Attn: Corporate Officer |
| 2259 Reliable Parkway | 33355 Glendale Ave. | 2881 N. Lecompte |
| Chicago IL 60686-0000 | Livonia MI 48150-0000 | Springfield MO 65803-5730 |
| Bank of America Leasing & Capital | Reliance Steel Company | ACC Climate Control |
| Attn:: Stuart Schwartz | Attn: Corporate Officer/Svc Ctr Div | Attn: Corporate Officer |
| 2600 West Big Beaver Road | File# 53461 | P. O. Box 1905 |
| Troy MI 48084-0000 | Los Angeles CA 90074-3461 | Elkhart IN 46515-0000 |
| BASF Corporation | Thunder Sky | |
| Attn: Corporate Officer | 139 Hennessy Road | |
| P.O. Box 121151/Dept. 1151 | **Wanchai Hong Kong, China** | |
| Dallas TX 75312-1151 | | |

| In re:                          | CHAPTER 11                    |
|                                 |                               |
| **KRYSTAL KOACH, INC.,**        |                               |
|                    Debtor(s).   | **CASE NO. 8:10-bk-26547-RK** |

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Blvd., Suite 1700, Los Angeles, CA 90067.

A true and correct copy of the foregoing documents described as **NOTICE OF SALE OF ESTATE PROPERTY** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing documents will be served by the court via NEF and hyperlink to the document.  On December 16, 2010, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Ron Bender    rb@lnbrb.com
- Frank Cadigan    frank.cadigan@usdoj.gov
- Philip A Gasteier    pag@lnbrb.com
- Michael J Hauser    michael.hauser@usdoj.gov
- Aaron J Malo    amalo@sheppardmullin.com
- Kyle J Mathews    kmathews@sheppardmullin.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Nathan A Schultz    schultzn@gtlaw.com
- Thomas E Shuck    malvarado@pmcos.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Pamela Kohlman Webster    pwebster@buchalter.com
- Michael H Weiss    mw@weissandspees.com, lm@weissandspees.com;jb@weissandspees.com

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL OR ATTORNEY SERVICE:**  On December 16, 2010, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service and/or by attorney service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

**Courtesy Copy via Overnight Express**
Hon. Robert Kwan
U. S. Bankruptcy Court/Santa Ana Division
411 West Fourth Street, Suite 5165
Santa Ana, CA  92701-4593

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on December __, 2010, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| December 16, 2010 | Stephanie Reichert | /s/ Stephanie Reichert |
| *Date* | *Type Name* | *Signature* |